167 P.2d 929

## HOM MOON JUNG v. SOO et ux.

### No. 4841.

Supreme Court of Arizona.

April 1, 1946.

Krucker, Fowler & Dodd, of Tucson, for appellant.

Fred W. Fickett and Wm. S. Dunipace, both of Tucson, for appellees.

STANFORD, Chief Justice.

This was an action brought in the superior court to determine by declaratory judgment proceedings the right of litigants under a written contract.

We will refer to litigants as designated in the trial court, terming the appellant, plaintiff, and appellees, defendants.

Plaintiff was the owner and operator of a grocery store, meat market and liquor business operated in leased premises in Tucson, Arizona, and having been called into military service assigned his lease, sold the business and merchandise and gave option to buy his liquor license to defendant Rose Soo. Cash was paid for the merchandise, and the fixtures were leased with the premises pending the defendants exercising their option to buy them. A contract between the parties was entered into May 15, 1943, and defendants went into possession. In September, 1944, plaintiff, through his attorney, claiming to have discovered that defendant T. H. Soo was not a citizen of the United States and therefore not a qualified elector of the state, and for other reasons expressed, notified defendants that their permit to operate plaintiff's liquor business was cancelled. Thereafter plaintiff brought his action asking that the contract be cancelled in so far as it related to the liquor license.

In the agreement and in the lease and option entered into are the following pertinent paragraphs.

"The liquor license shall remain in the name of the Seller and shall be managed by Rose Soo who shall have the right to purchase the liquor license for the additional sum of Five Hundred ($500.00) Dollars, said right to purchase shall only be effective if and when the option to purchase the equipment is exercised."

"The Lessor hereby designates and appoints B. H. Solot as his Agent in all matters pertaining to this Lease and all rental payments shall be made payable to and at the office of Solot Realty, 1842 East 6th Street, Tucson, Arizona."

The defendants filed an answer and counterclaim for a decree of specific performance requiring plaintiff, or his agent B. H. Solot, to execute a bill of sale to defendants for the fixtures and equipment involved; for a decree of specific performance requiring plaintiff to transfer by the proper procedure the liquor license involved to Rose Soo and asked that plaintiff be enjoined pendente lite and permanently from removing the liquor license from the premises, and for certain damages. Also defendants alleged tender to the clerk of the court the sum of $5600 in full settlement of plaintiff's interest in the business under the agreement referred to.

By the trial court's decree, among other things, Solot was appointed agent of the plaintiff for the purpose of executing certain documents and for the purpose of carrying out the decree and directing the said Solot to execute and deliver to defendant Rose L. Soo the transfer of the liquor license; that the clerk of the court pay unto said Solot the sum of $5600; that the court retains jurisdiction of the cause to do any and all things necessary to enforce the decree.

The court made findings of fact before the rendition of judgment, and from the judgment rendered the plaintiff brings his appeal to this court.

Among plaintiff's contentions are the following:

"Plaintiff contends the contract dated May 15, 1943 is illegal and void since it is a contract whereby one party is to operate a liquor business under a license issued to another. The contract is also void because it contemplates a transfer of a liquor license without the approval of the State Liquor Department, the County Board of Supervisors and without giving the notices required by law. It is also contended that, Mr. Soo not having been a citizen at the time the contract was entered into, the contract is illegal under Sec. 72-106, A.C.A. 1939, which provides in part as follows:

" '(a) Every spirituous liquor licensee shall be a qualified elector. *If a partnership, all members shall be qualified electors.*' (Italics ours)

"It is also contended that specific performance is not a proper remedy in this case but that for any breach of the contract only an action for damages will lie.

"Plaintiff also contends that defendants broke the contract by reason of their failure to obtain the Federal Liquor License Stamp and because they hired minors to dispense liquor in violation of state law."

In plaintiff's argument under the heading of "Contract whereby one conducts his own liquor business under license to another is void," plaintiff quotes from 30 Am.Jur., Intoxicating Liquors, Sec. 73, p. 296, as follows:

"Definition and Nature of License.—In general, a 'license' is a permit or authorization to do what without a license would not be lawful. Generally, especially from the standpoint of the right and power of revocation, a liquor license is regarded as anything but a property or contract right. It is consistently declared to be a mere personal and temporary permit or privilege to be enjoyed so long as its conditions and restrictions are complied with, to do what could not be lawfully done without it, and it is not property in any legal or constitutional sense. Its issuance is a matter not of right, but purely of legislative grace, and may be extended, limited or denied without violating any constitutional right."

Plaintiff also quotes John Barth Co. v. Brandy, 165 Wis. 196, 161 N.W. 766, 2 A.L.R. 1516, and many other cases, among them being the case of Teachout v. Bogy, 175 Cal. 481, 166 P. 319, 321. This case involved the determination of the validity of a contract where the plaintiff agreed to sell defendants a certain lease on a building located in Los Angeles, including billiard parlor, cigar stand and also the license for the conducting of a saloon business on the premises. The opinion, as quoted by plaintiff herein says:

"A permit of this character is issued in the exercise of the police power as a means.

of regulating the business of selling intoxicating liquors. Such permit is personal to the licensee, and it authorizes him alone to carry on the business. There was no law authorizing a transfer of the permit. Hence a transfer of the paper issued as evidence of the permit did not carry to the transferees the right to conduct the business, nor exempt them from the prohibition forbidding any person to engage in the business without a permit. In so doing they would be guilty of a violation of the law to the same extent as if they had no permit. (Citing case.) The contract was therefore an agreement whereby the defendants were to carry on the saloon business in violation of express law."

\* \* \* \* \* \*

"The present case comes clearly within the rule. The promise was to pay $16,500 for the lease and the license. The consideration consisted of several things, one of which, the agreement to transfer the license, contemplating as it did the carrying on of the saloon business by Bogy Bros. without any other license, was illegal. The contract was, therefore, contrary to an express provision of the law and contrary to the policy of express law as defined in section 1667. \* \* \*"

▇▇▇ We agree, that in the absence of any statute, such a license is a personal permit, not transferable, but our Section 72-108 on the subject of transfer of liquor license is as follows:

"Issuance of licenses.— \* \* \*

"(c) Any spirituous liquor license shall be transferable as to the person licensed or as to any location within the same county, upon payment of a transfer fee of twenty-five dollars ($25.00) and after application in the manner provided for original application for a license. The transferee shall have the qualifications required of an original applicant. \* \* \*"

In view of this fact we quote from the Michigan case of Roodvoets v. Anscer, 308 Mich. 360, 13 N.W.2d 850, 851, which is applicable:

"What the plaintiff contracted to pay $1,000 for was a contingency and is a contingency. What the defendant agreed to do was to make application in the manner and form as required by the liquor control commission of the State to transfer the license to the plaintiff.

\* \* \* \* \* \*

"The word 'transferred' as used here implies and carries with it the making of an agreement to transfer. It is therefore not illegal in Michigan to agree to make a transfer. It is simply subject to the consent of the commission and of the local legislative body."

As to the case of Teachout v. Bogy, supra, cited by plaintiff, defendants claim that case is in support of defendants' contention. Because the court found in that case that, "There was no law authorizing the transfer of the permit," as heretofore quoted, and that was the basis for finding

the contract providing for the sale of liquor license was illegal and void.

In the case of Deggender v. Seattle Brewing & Malting Co., 41 Wash. 385, 83 P. 898, 899, 4 L.R.A.,N.S., 626, this is said:

"Under statutes which do not permit transfers of the license from one person to another, and where the right is a personal privilege only, we think the rule stated is undoubtedly correct. But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality."

■ On the subject of T. H. Soo, one of the defendants, not being a citizen of the United States and not qualified to have a liquor license although his wife was qualified, the plaintiff quotes from Sec. 72-106, A.C.A.1939, which provides:

"(a) Every spirituous liquor licensee shall be a qualified elector. If a partnership, all members shall be qualified electors."

Also plaintiff quotes from our case of National Union Indemnity Co. v. Bruce Bros., 44 Ariz. 454, 38 P.2d 648, 653.

" * * * But it is practically universally held that a party to an illegal contract cannot, either at the time of the execution of the contract or afterwards, waive his right to set up the defense of illegality in any action thereon by the other party * * *."

Rose Soo was a citizen of the United States and apparently in every way qualified for a license, but was serving merely when this action was brought in the capacity as manager of the sales of any intoxicating liquors. In other words, she was managing with an option to buy subject to the approval by the state.

From the evidence introduced the court found:

"That the retail liquor dealer's license referred to in Paragraph II of plaintiff's complaint, being License issued to T. and T. Market, 2048 South Sixth Avenue, in South Tucson, Arizona, by the State Department of Liquor License and Control of Arizona is still in full force and effect and in good standing, although the payment of the annual fee due January 1, 1945, has been waived under the law by reason of the plaintiff being in the military service of the United States.

"That the defendant, Rose L. Soo, has fully exercised her option to purchase the retail liquor dealer's license hereinbefore referred to."

In regard to the claim that specific performance is not the proper remedy, plaintiff maintains:

"1. Their remedy at law—an action for damages—is an adequate remedy."

"2. Specific performance will not be decreed where full performance depends upon the consent or approval of third persons—in this case the Department of Liquor Licenses and Control and the City Counsel, and where it does not appear that such consent or approval has been or can be obtained."

In this respect plaintiff quotes from 58 C.J. 884, and among others, the case of Langford v. Taylor, 99 Va. 577, 39 S.E. 223. The quote from C.J., supra, is as follows:

"Performance Involving Act or Assent of Person Not Party to Contract. Where defendant's performance depends upon the consent or approval of one not a party to the contract who is free to withhold his consent, specific performance of the contract will not be decreed where it does not appear that such consent or approval has been or can be obtained, or where it appears that such consent or approval is withheld or refused or has become impossible. Similarly, specific performance will not be decreed if performance involves acts requiring the participation of others not parties to the contract, as, for example, a contract calling for acts to be done on the land of another than the vendor; but it is no objection to the specific enforcement of a contract that consent of a third person is necessary to its performance, where it appears that such person does or will consent."

We think that specific performance is a proper remedy, as pointed out in Yuengling Realty Co. v. Basarob, 49 Pa. Dist. & Co. R. 449, where the court recognizes the uniqueness of a liquor license as well as the fact that the loss of it to a party would cause irreparable injury. We quote from said case:

"* * * Defendants, Michael Basarob and Julia Basarob, entered into an agreement and lease with plaintiff, Yuengling Realty Company, whereby they agreed to lease the premises located at 1200 Pottsville Street, Mechanicsville, Schuylkill County, Pa., for the purpose of operating a restaurant. They further agreed in writing not to sell or transfer the restaurant liquor license for this location to any person nor to transfer it to another location without the consent and agreement of plaintiff. The validity of this agreement is not questioned. The intent of the parties is evident upon the face of the agreement and it was apparently part of the consideration for the leasing of the premises wherein the restaurant was to be operated by defendants. The question remaining is as to whether the agreement is enforceable in equity by injunction.

"The property in this case has been occupied as a hotel or restaurant property for many years. Plaintiff alleges that the transfer of the restaurant liquor license from these premises to another location would cause it irreparable damage. This damage is accentuated by the Liquor License Quota Act of June 24, 1939, P.L. 806, sec. 2 [47 P.S. § 744—1002], which limits

the number of liquor licenses in the various municipalities of this State.

"The damage sustained by the plaintiff as a result of the contemplated breach of the contract by the defendants would be speculative and the subject of much conjecture. It could not readily be determined by any rule or measure of damages so as to permit plaintiff an adequate remedy at law. Where the legal remedy is inadequate and incomplete, and in some instances inconvenient, equitable jurisdiction will be assumed by the court to grant a complete remedy to plaintiff. Kirkpatrick v. McDonald, 11 Pa. 387; Appeal of Brush Electric Company, 114 Pa. 574 [7 A. 794]; and Western Pennsylvania Hospital v. Lichliter et al., 340 Pa. 382, [17 A.2d 206, 132 A.L.R. 1146].

"The fact that a liquor · license is a property right with a peculiar and special value and the violation of an agreement to maintain the license at a specific location constitutes a breach of contract so as to invoke the equitable remedy of injunction has been decided in Di Pietro v. Cichilli, [38 Pa.Dist. & Co. R. 404], 42 Lack. [Jur., Pa.], 72."

We think there is no basis for the contention of plaintiff that the court will not decree specific performance when the subject matter of the contract is personal property.

It appears from the allegations of the cross complaint and the testimony that the defendants could not be compensated in damages for the loss of the license. It is probable that no similar license could be secured. Under these circumstances, specific performance lies. Yuengling Realty Co. v. Basarob, supra; McLaughlin v. Piatti, 27 Cal. 457; Senter v. Davis, 38 Cal. 450; 49 Am.Jur. 148, section 126, Specific Performance.

As to the other assignments of error submitted by plaintiff we do not think it necessary to consider them.

We find no error in the record and find that the case has been fairly and equitably determined.

The judgment is affirmed.

LA PRADE and MORGAN, JJ., concur.