## Gardner Application

*James L. Weirbach,* for applicant.

HENNINGER, P. J., April 23, 1956.—Harry A. Gardner, an ironworker on construction jobs, has applied for a private detective's license under The Private Detective Act of August 21, 1953, P. L. 1273, 22 PS §11.

He is a young man 32 years of age, bears an excellent reputation and would be fully qualified in every respect for receipt of a license, had he been regularly employed either as a detective, as a member of the United States Government investigative service, as a

sheriff or as a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years.

The applicant insists that he has been regularly employed as a detective in the employ of the McGorry Detective Agency of Nesquehoning, Carbon County, since 1952. Applicant testified that he has worked with McGorry "roughly about three hundred hours a year", mostly patrolling football and other games, that McGorry would talk over his cases with applicant and that on several occasions, beginning in 1953, McGorry entrusted him with the location of needed information.

Mr. McGorry himself testified that he had two men working "standard" and others, including applicant, worked as needed, being paid by the hour. McGorry estimated that applicant had done investigation on a total of nine cases, the rest of his work presumably having been patrolling at games.

The question is whether 300 hours per year on a call basis patrolling games, with nine investigations in three to five years, constitutes regular employment as a detective for three years.

McGorry himself stressed that applicant was an "agent" and not a detective and that the two "standard" employes, "are regular", in contrast to the others. The latter distinction may be due simply to a fortuitous choice of words, but the former was deliberate.

In analogy with workmen's compensation (Miller v. Farmers National Bank, 152 Pa. Superior Ct. 405, 410), applicant asks us to find that his employment was regular and not casual as defined in Cochrane v. William Penn Hotel, 339 Pa. 549, which states, p. 552:

". . . even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of frequency and regularity,

and, it being thus anticipated, there is an understanding that the employee is to perform such work as the necessity for it may from time to time arise."

It is to be noted, however, that there is not a strict analogy with workmen's compensation because there the contrast is between casual employment and employment in the regular course of the employer's business and relates to the employer rather than to the employe.

Assuming, however, that applicant was regularly employed by McGorry, a private detective, it does not follow that he was regularly employed as a detective. We are convinced that both applicant and McGorry puffed up the investigative work done by applicant, but taking them at their word, it is still much too thin to constitute regular employment as a private detective unless we count applicant's work as a patrolman as employment as a detective.

In our opinion, to do so would certainly violate the spirit as well as the letter of the act. The act has all the vices of an act passed to entrench a certain group of people in their profession and to make it difficult for others to break through the barriers, but it does express the will of the General Assembly and must be interpreted to carry out its expressed purpose.

The vice of the act is that it lumps many different businesses under the head of "Private detective business" and yet does not permit the court to limit a successful applicant to any part of the businesses in which only a private detective is permitted to engage. Under section 6 of the Act of 1953, 22 PS §16, if the applicant complies with the requirements of the act: "the court of quarter sessions *shall* issue and deliver . . . a certificate of license to conduct such business."

The "business" referred to is private detective business which by definition includes 11 types of work, among them: "(11) The furnishing, for hire or re-

ward, of watchmen, or guards, or private patrolmen", etc.

It follows that while applicant's experience has been almost exclusively with patrolling games, an activity not clearly within any of the categories, his experience in all other phases of detective work has been sporadic and meager.

We are convinced that the "regular employment as a detective" was intended to freeze in their business those who had theretofore been licensed as private detectives, but who might not possess the necessary qualifications under the new act. We are not now deciding whether *agents* as opposed to detectives can qualify if regularly so employed for three years. Under similar language of New York's law upon the same subject, it seems that the courts have held that investigative work similar to that of a detective could qualify a person to receive a private detective license: Norwood v. Ward, 46 F. 2d 312.

Whether or not regular employment in investigative work would render a person competent, it is clear that merely patrolling games does not. To hold that it did, would work a repugnancy with the provision that qualifying police experience must be in the rank above that of a patrolman.

Surely a patrolman's experience comes closer to investigative work than does the patrolling of games and since the patrolman's experience fails to qualify him for a detective's license, the mere fact of employment by a detective agency for similar work ought not to qualify.

When we consider the numbers of persons employed to patrol games, to hold otherwise would open the doors wide to a flood of applications for detective licenses.

It has always been the policy of this court to hold the number of detective licenses to a minimum. Now the legislature has adopted the same policy, leaving to

the courts only the question of compliance with legislative requirements. We shall grant licenses, as we are bound to do, when these requirements are met, but we do not intend to interpret the act so loosely as to nullify its intent.

Now, April 23, 1956, defendant's application for a private detective's license is denied.